UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

CHRISTINA PETERS-STASIEWICZ,
1505 117th Street
Wauwatosa, Wisconsin 53226

       Plaintiff,

       v.

A.B. DATA, LTD.
600 A.B. Data Drive
Milwaukee, Wisconsin 53217

       Defendant.

Case No.: 17-cv-847

**JURY TRIAL DEMANDED**

---

## COMPLAINT

---

COMES NOW Plaintiff, Christina Peters-Stasiewicz, by her counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendant, alleges and shows to the Court as follows:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Equal Pay Act of 1963, as amended, the Fair Labor Standards Act, as amended, and 28 U.S.C. § 1343 because this case involves an Act of Congress providing for the protection of civil rights.

2. The unlawful employment practices of which Plaintiff complains occurred within the Eastern District of Wisconsin and therefore venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

3. Plaintiff, Christina Peters-Stasiewicz, is an adult female resident of the State of Wisconsin residing in Milwaukee County with a post office address of 1505 N. 117th Street, Wauwatosa, Wisconsin 53226.

4. Defendant, A.B. Data, LTD, was, at all material times herein, a Wisconsin company doing business in the State of Wisconsin with a principal office address of 600 A.B. Data Drive, Milwaukee, Wisconsin 53217.

5. Defendant provides targeted fundraising and business critical communications, class action administration, direct marketing, and list services to its clients.

6. In approximately July 2004, Defendant hired Ms. Peters-Stasiewicz as a Claims Administrator.

7. Ms. Peters-Stasiewicz worked as a Claims Administrator at Defendant until in or about May 2005.

8. In or about May 2005, Ms. Peters-Stasiewicz voluntarily terminated her employment at Defendant.

9. In approximately September 2006, Defendant re-hired Ms. Peters-Stasiewicz as a Claims Administrator II.

10. In approximately October 2006, Defendant promoted Ms. Peters-Stasiewicz to a Team Leader position.

11. In approximately 2007, Defendant promoted Ms. Peters-Stasiewicz to a Senior Team Leader position.

12. In approximately June 2008, Defendant promoted Ms. Peters-Stasiewicz to a Claims Specialist position.

13. In approximately June 2009, Defendant promoted Ms. Peters-Stasiewicz to an Associate Account Executive position.

14. In approximately early 2011, Defendant promoted Ms. Peters-Stasiewicz to an Account Executive or Project Manager position.

15. In approximately October 2013, Defendant promoted Ms. Peters-Stasiewicz to the position of Senior Project Manager.

16. As of October 2013, Ms. Peters-Stasiewicz had approximately seven years of class action administration experience and four years of project management experience.

17. From approximately late 2012 and for the remainder of her employment with Defendant, Ms. Peters-Stasiewicz directly reported to Eric Miller, Defendant's Vice President of Case Management. Miller directly reported to Thomas Glenn, Defendant's President.

18. Ms. Peters held the position of Senior Project Manager from October 2013 and through the remainder of her employment with Defendant until November 30, 2016.

19. During the entirety of Ms. Peters' employment with Defendant, she met or exceeded Defendant's work performance expectations of her.

20. During Ms. Peters' employment with Defendant as Senior Project Manager, her job duties and job responsibilities included: serving as the client contact and directing the administration of class action settlement and other class administration work; coordinating with internal departments and vendors and external vendors to effectuate settlement services; and serving as the leader on a project management team, among other job duties.

21. In addition to her project management duties, Ms. Peters assisted the Defendant's Proposal Writer by preparing client proposals for cases, generated business for Defendant by developing and fostering client relationships, and trained and mentored new project managers and case coordinators.

22. In or about early 2012, Defendant increased Ms. Peters-Stasiewicz's annual salary to $58,000.

23. When Defendant promoted Ms. Peters-Stasiewicz into the position of Senior Project

Manager in approximately October 2013, it continued to compensate her at an annual salary of $58,000.

24. In or about 2014, Defendant increased Ms. Peters-Stasiewicz's annual salary to $62,000.

25. In or about 2015, Defendant increased Ms. Peters-Stasiewicz's annual salary to $72,000.

26. In or about April 2016, Defendant increased Ms. Peters-Stasiewicz's annual salary to $85,000.

27. Between approximately April 2016 and the end of Ms. Peters-Stasiewicz's employment with Defendant on or about November 30, 2016, Defendant compensated her at an annual rate of $85,000.

28. In or about late 2012, Defendant hired Adam Walter into the position of Senior Project Manager.

29. At the time of hire at Defendant, Walter had approximately five years of class administration experience and had performed work as the equivalent of Defendant's Project Coordinator position a position which has less authority and autonomy than a project manager position.

30. From approximately late 2012 until the present, Defendant employed Walter in the position of Senior Project Manager.

31. During Walter's employment with Defendant as Senior Project Manager, his job duties or job responsibilities included: servicing as the client contact and direct the administration of class action settlement and other class administration work; coordinating with internal departments and vendors and external vendors to effectuate settlement services; and serve as a leader on a project

management team, among other job duties.

32. On information and belief, Walter did little or no work for Defendant assisting Defendant's Proposal Writer by preparing client proposals for cases, independently generating business for Defendant by developing and fostering client relationships, and/or training and mentoring new project managers and case coordinators for Defendant.

33. On information and belief, Defendant compensated Walter at an annual salary of $91,000 in the position of Senior Project Manager from April 2012 through at least November 30, 2016.

34. In or about early 2015, Ms. Peters-Stasiewicz learned that Defendant compensated Walter at an annual rate of $91,500.

35. In or about early 2015, Jeanne Cassel, Vice President, Administration, Facilities, Human Resources, confirmed to Ms. Peters-Stasiewicz that Defendant compensated Walter at an annual rate of $91,500.

36. In or about April 2015, Ms. Peters-Stasiewicz complained to Miller about the pay disparity between herself and Walter.

37. In response, Miller denied that a pay disparity existed and stated to Ms. Peters-Stasiewicz "Jeanne will kill us," or words to that effect.

38. In or about May or June 2015, Ms. Peters-Stasiewicz complained to Cassel, about the pay disparity between herself and Walter.

39. In response, Cassel told Ms. Peters-Stasiewicz that "it is very common for incumbents to be paid less," or words to that effect, and asked Ms. Peters-Stasiewicz to think about how she (Ms. Peters-Stasiewicz) was perceived, how she sounded in meetings, her clothes, her demeanor, and her posture, or words to that effect.

40. In or about October 2015, Ms. Peters-Stasiewicz asked Defendant to increase her compensation such that her annual salary was equal to that of Walter.

41. In or about October 2015, Miller and Human Resources refused Ms. Peters-Stasiewicz's request to raise her salary consistent with Walter's salary.

42. Sometime after October 2015 and through the end of her employment on November 30, 2016, Defendant began paying Ms. Peters-Stasiewicz "spot" bonuses as part of her compensation. Defendant's payment of these bonuses was the result of Defendant's refusal to increase Ms. Peters-Stasiewicz's salary consistent with Walter's salary.

43. The bonuses paid to Ms. Peters-Stasiewicz from in or about October 2015, through November 30, 2016, ranged in amount, but did not exceed $5,000 per bonus and were paid sporadically throughout the remainder of Ms. Peters-Stasiewicz's employment with Defendant.

44. On information and belief, the bonuses paid to Ms. Peters-Stasiewicz from October 2015, through November 30, 2016, did not make up the difference between the annual salary paid to Walter versus the annual salary paid to Ms. Peters-Stasiewicz.

45. On information and belief, throughout Walter's employment with Defendant, Defendant paid Walter bonuses as part of his compensation as Senior Project Manager.

46. During their respective periods of employment with Defendant, Ms. Peters-Stasiewicz and Walter worked the same days and shifts.

47. During their respective periods of employment with Defendant, Ms. Peters-Stasiewicz and Walter utilized the same support staff.

48. During their respective periods of employment with Defendant, Ms. Peters-Stasiewicz and Walter both reported directly to Miller.

## CAUSE OF ACTION – EQUAL PAY ACT VIOLATIONS

49. Ms. Peters-Stasiewicz re-alleges and incorporates paragraphs 1-48 of this complaint by reference.

50. Defendant intentionally and willfully discriminated against Ms. Peters-Stasiewicz related to her compensation within the meaning of the Equal Pay Act of 1963 ("EPA"), in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, *et seq.*, as amended by the EPA, in reckless indifference to her federally protected rights.

51. Defendant intentionally and willfully discriminated against Ms. Peters-Stasiewicz on the basis of her sex/gender (female) by compensating her less than her similarly situated male counterparts within the meaning of the Equal Pay Act of 1963 ("EPA"), in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, *et seq.*, as amended by the EPA, in reckless indifference to her federally protected rights.

52. As a result of Defendant's intentional and willful discrimination, Ms. Peters-Stasiewicz has suffered damages in the form of lost wages.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, liquidated damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

2. Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute; and

3. Grant to Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**

Dated this 19th day of June, 2017.

                                        WALCHESKE & LUZI, LLC
                                        Counsel for Plaintiff

                                        **_s/ Kelly L. Temeyer_**_____
                                        Scott S. Luzi, State Bar No. 1067405
                                        Jesse R. Dill, State Bar No. 1061704
                                        Kelly L. Temeyer, State Bar No. 1066294

WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
sluzi@walcheskeluzi.com
jdill@walcheskeluzi.com
ktemeyer@walcheskeluzi.com